# EXHIBIT A

1  Heather Appleton, Esq. - SBN 162283
   happleton@appletonlg.com
2  Cherryl F. Cercado, Esq. - SBN 249990
   ccercado@appletonlg.com
3  APPLETON LAW GROUP, APC
   2041 Rosecrans Avenue, Suite 380
4  El Segundo, California 90245
   Telephone:    (310) 474-7022
5  Facsimile:    (310) 474-7023

6  Attorneys for Plaintiff
   Natasha Scoggins
7

**F I L E D**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

OCT 1 6 2020

BY _____
BRIAN GUTIERREZ, DEPUTY

8            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9               **FOR THE COUNTY OF SAN BERNARDINO**

10

11 NATASHA SCOGGINS,                    )  CASE NO.:  **CIV DS  2 0 2 2 4 3 0**
                                        )
12         Plaintiff,                   )  CASE FILED:  **BY FAX**
                                        )
13 vs.                                  )  ASSIGNED FOR ALL PURPOSES TO HON.
                                        )  _____, DEPT. ___
14 RYDER INTEGRATED LOGISTICS, INC., a  )
   Delaware corporation; RYDER SYSTEM,  )  **PLAINTIFF NATASHA SCOGGINS'**
15 INC., a corporation of unknown jurisdiction; )  **COMPLAINT FOR DAMAGES AND**
   RYDER SYSTEMS, INC., a corporation of )  **INJUNCTIVE RELIEF FOR:**
16 unknown jurisdiction; and DOES 1 through )
   50,                                  )  1.   **Wrongful Termination in Violation**
17                                      )       **of Public Policy;**
           Defendants.                  )  2.   **Unlawful Retaliation;**
18                                      )  3.   **Discrimination Based on Being**
                                        )       **Regarded as "Disabled";**
19                                      )  4.   **Failure to Prevent Discrimination,**
                                        )       **Harassment and Retaliation;**
20                                      )  5.   **Failure to Pay Statutorily Mandated**
                                        )       **Wages;**
21                                      )  6.   **Breach of Express Verbal and**
                                        )       **Written Contract;**
22                                      )  7.   **Promissory Fraud;**
                                        )  8.   **Failure to Pay Premium Pay for**
23                                      )       **Missed Meal Periods;**
                                        )  9.   **Failure to Pay All Wages Due Upon**
24                                      )       **Termination of Employment in**
                                        )       **Violation of Labor Code section 201;**
25                                      )  10.  **Failure to Timely Provide Complete**
                                        )       **Personnel File;**
26                                      )  11.  **Violation of Labor Code Section**
                                        )       **6311; and**
27 _____  )  12.  **Unfair Business Practices**
                                        )
28                                         **[DEMAND FOR TRIAL BY JURY]**

2o023 - 0513#495

1

**NATASHA SCOGGINS' COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**
Client Files\KYLE01\003\00072823.WPD                    Printed on Recycled Paper



Plaintiff Natasha Scoggins complains and alleges as follows:

## PARTIES

1.      At all relevant times, Plaintiff Natasha Scoggins ("Plaintiff") was and now is an individual residing in the County of San Bernardino, State of California.

2.      At all relevant times, Defendant Ryder Integrated Logistics, Inc. was and now is a Delaware corporation doing business and employing individuals in the County of San Bernardino, State of California.

3.      At all relevant times, Defendant Ryder System, Inc. was and now is a corporation of unknown jurisdiction doing business and employing individuals in the County of San Bernardino, State of California, though not registered with the California Secretary of State.

4.      At all relevant times, Defendant Ryder Systems, Inc. was and now is a corporation of unknown jurisdiction doing business and employing individuals in the County of San Bernardino, State of California, though not registered with the California Secretary of State.

5.      The true names and capacities of Defendants DOES 1 through 50, inclusive, whether individual, corporate, associate or otherwise, are unknown to Plaintiff at the time of filing this Complaint and Plaintiff, therefore, sues said defendants by such fictitious names and will file an Amendment to this Complaint to show their true names or capacities when the same have been ascertained. Plaintiff is informed and believes, and based thereon alleges, that each of the DOE defendants is, in some manner, responsible for the events and happenings herein set forth and proximately caused injury and damages to Plaintiff as herein alleged.

6.      At all times herein mentioned, each of the defendants were acting as the agents and/or employees of each of the remaining defendants, and were, at all times herein mentioned, acting within the scope of said agency and employment, except where alleged or contended otherwise.

7.      Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and those defendants proximately caused, are responsible for, and/or legally liable for Plaintiff's damages as herein alleged. Each reference in this complaint to "Defendant," "Defendants," or a specifically

2

1 | named defendant refers to and includes all defendants sued under fictitious names. On
2 | information and belief, Plaintiff makes all allegations contained in this Complaint against all
3 | defendants, including DOES 1 through 50.

4 |     8.    Whenever in this Complaint reference is made to any act of "Defendants," such
5 | allegations shall be deemed to mean all named Defendants and DOES 1 through 50, or their
6 | officers, agents, managers, representatives, employees, heirs, assignees, customers, tenants, did or
7 | authorized such acts while actively engaged in the operation, management, direction or control of
8 | Defendants' affairs and while acting within the course and scope of their duties, except as
9 | specifically alleged to the contrary.

10 |     9.    At all times herein mentioned and with respect to the specific matters alleged in this
11 | Complaint, except where specifically alleged to the contrary, Plaintiff is informed and believes that
12 | each defendant was a parent, subsidiary, affiliate, alter ego, partner, agent, franchisee, licensee,
13 | employee, employer, controlling franchiser, controlling licensor, principal, and/or joint venturer of
14 | each of the remaining defendants, and was at all times acting within the course and scope of such
15 | agency, service, employment, control and/or joint venture, and each defendant has ratified,
16 | approved, profited from and/or authorized the acts of each of the remaining defendants and/or
17 | failed to prevent such acts when having the power and/or duty to do so, with full knowledge of
18 | said acts.

19 |     10.    Plaintiff is informed and believes and based thereon alleges that some of the
20 | defendants may be liable to Plaintiff under legal theories and doctrines including but not limited to
21 | (1) joint employer; (2) integrated enterprise; (3) agency; and/or (4) alter ego; based in part, on the
22 | facts set forth below.

23 |     11.    The possibility of dual employment is well recognized: "Where an employer sends
24 | an employee to do work for another person, and both have the right to exercise certain powers of
25 | control over the employee, that employee may be held to have two employers." (*Mathieu v.*
26 | *Norrell Corp.* (2004) 115 Cal.App.4th 1174, 1183). In such cases, the employee may look to
27 | either or both employers for enforcement of her rights. (*Id.* at 1184). An employee asserting
28 | claims against two joint employers "must show that (each) defendant knew or should have known

3

**NATASHA SCOGGINS' COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1    of the discriminatory conduct and that it failed to take those corrective measures within its

2    control." (*Williams v. Grimes Aerospace Co.* (D SC 1997) 988 F.Supp. 925, 937). Also, in *SEIU*

3    *v. Sup. Ct.* (1982) 137 Cal.App.3d 320, 325, the Court noted that the factors to be considered in

4    determining the "joint" employer issue were: "exclusive right to control the duties of the

5    personnel, the power to discharge the employee, payment of salary, nature of the services, and the

6    parties' belief as to the employment relationship."

7        12.    Where parent and subsidiary (or other related business entities) operate as an

8    "integrated enterprise," the parent is liable for discrimination by any subsidiary. (*Hukill v. Auto*

9    *Care, Inc.* (4th Cir. 1999) 192 F.3d 437, 442; *Morgan v. Safeway Stores, Inc.* (9th Cir. 1989) 884

10   F.2d 1211, 1214). In determining whether an "integrated enterprise" exists, Courts focus on the

11   following factors: "interrelation of operations"; "centralized control of labor relations"; "common

12   management"; and "common ownership or financial control." (*Lockard v. Pizza Hut, Inc.* (10th

13   Cir. 1998) 162 F.3d 1062, 1069; *Cook v. Arrowsmith Shelburne, Inc.* (2nd Cir. 1995) 69 F.3d

14   1235, 1240; *Laird v. Capital Cities/ABC, Inc.* (1998) 68 Cal.App.4th 727, 737; *Kang v. U. Lim*

15   *America, Inc.* (9th Cir. 2002) 296 F.3d 810, 815).

16                            **JURISDICTION AND VENUE**

17       13.    This Court has personal jurisdiction over the Defendants because they are residents

18   of, have contacts with, and/or were and are doing business in the State of California.

19       14.    Venue is proper in this County and Judicial District in accordance with Code of

20   Civil Procedure sections 394 and 395(a) because Defendants, or some of them, do business in this

21   judicial district and Plaintiff and others were employed by Defendants in this County and Judicial

22   District.

23                            **FACTUAL ALLEGATIONS**

24       15.    In August, 2018, Natasha Scoggins (then known as Natasha Kyle) submitted an

25   employment application to work for Defendants.

26       16.    During Plaintiff's interview for the position on August 28, 2018, Wellington

27   ("Butch") Duplessis explained to Plaintiff that the job was "hard work," and expressly offered to

28   Plaintiff, "if you need to be reassigned, let me know."

4

17.    As part of her August 28 interview, Plaintiff was required to perform a road test, which lasted approximately 1 hour.  Plaintiff was not compensated for that time worked.

18.    By letter dated August 30, 2018, Plaintiff was offered the position of Truck Driver, Class B - FT with Defendants.

19.    Plaintiff began working for Defendants on September 4, 2018.

20.    On or about September 4, 2018, during Plaintiff's orientation, Duplessis told Plaintiff to let him know "if there are any challenges," and offered, "I can put you in another position."  When Plaintiff asked Duplessis if he had that power, he replied to her that he "absolutely" had that power.

21.    During her first week of work, Plaintiff was assigned to train with a driver named Ron.  During that first week, Ron showed Plaintiff pictures of his house, pictures of his nephew and even once drove by his house during their route.  Ron also stood so close to Plaintiff that it made her feel uncomfortable.

22.    During her second week of work, Plaintiff was assigned to train with a driver named Raul.  Plaintiff asked Raul for assistance in learning how to safely exit the truck.  Raul responded that he used the roller door, but Plaintiff responded that she did not think that method was safe.

23.    On or about September 12, 2018, Plaintiff made a delivery to a Yard House location in Temecula, California.  As she walked through the restaurant with her delivery, a Yard House employee whistled at her, and exclaimed, "Hot" at Plaintiff.

24.    On September 21, 2018, on one of her first deliveries with Raul, Plaintiff was double-checking the paperwork and the delivery order, and Raul became impatient, telling Plaintiff to "just leave it," and asked "what's wrong?"  Plaintiff responded that she was simply trying to make sure the delivery was correct.

25.    As they were walking back to the truck, Plaintiff said to Raul, "If you're not going to train me, we need to address it."  Raul replied, "I'm not training you."  When Plaintiff asked Raul what he was doing, he responded by exclaiming "Fuck!" and added "They just said you were riding with me."

5

26.     When they got back into the truck, Raul snatched the papers out of Plaintiff's hand, slammed his door and sped away to the next customer. While on the way to the next delivery location, Raul was driving recklessly, talking on a personal phone call, and generally ignoring Plaintiff.

27.     Once they arrived at the next customer, Plaintiff remained in the truck while Raul did the delivery. After completing the delivery, Raul continued his personal phone call in the customer's parking lot.

28.     Plaintiff exited the truck and asked Raul to call dispatch. At first, Raul ignored Plaintiff and then he got back in the truck and informed Plaintiff that Suzanne Berokoff was on the phone. Plaintiff requested that Raul put the call on speaker phone, and when he did, Plaintiff learned she was speaking not only with Berokoff, but also Group Logistics Manager Mike Sharbo.

29.     Plaintiff reported to Berokoff and Sharbo she did not feel safe riding with Raul, that he had snatched the invoices from her, slammed the door and used the "f" word with her. Plaintiff asked for someone to come "rescue" her.

30.     Berokoff responded that she would work on it, but Sharbo interjected, asking Plaintiff to Uber back. Plaintiff replied that she was unable to do that, and asked again for someone to come get her. Sharbo asked Plaintiff if she would continue to ride with Raul until they got to their planned delivery location in Palm Springs.

31.     While they drove to Palm Springs, Raul was on personal phone calls most of the time he was driving. When he hung up, Raul asked Plaintiff to just finish the route with him. Plaintiff responded that they should just try to get through the day.

32.     When they returned to the Fontana Hub at the end of their day, Plaintiff immediately went to speak with Sharbo in his office. Plaintiff introduced herself to Sharbo and reiterated what had occurred earlier that day. Sharbo responded by telling Plaintiff to report the incident to Human Resources and Duplessis.

33.     After meeting with Sharbo, Plaintiff went to the Human Resources office and reported what had occurred to Human Resources Coordinator Nancy Chanon. Chanon told Plaintiff that she (Plaintiff) would need to discuss the incident with Human Resources Manager,

6

**NATASHA SCOGGINS' COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1   Shelly Steavens, but added that Steavens was gone for the day. Plaintiff replied that she would

2   send an email to Duplessis about the incident. In chatting further, Chanon mentioned to Plaintiff

3   that there was an open admin position at the Fontana Hub, that she suggested might be a suitable

4   fit for Plaintiff.

5         34.    Later that same day, Plaintiff sent an email to Duplessis, requesting to meet with

6   him regarding safety, training and her "situation with Raul." Plaintiff asked Duplessis to let her

7   know where to report the following Tuesday (after her regular days off, Saturday, Sunday and

8   Monday).

9         35.    In response to Plaintiff's email, Duplessis sent an email to Plaintiff telling her to

10   report to the Fontana Hub at 9:00 a.m. on Tuesday September 25, 2018.

11        36.    As she was directed, on Tuesday September 25, 2018, Plaintiff met with Duplessis

12   and Steavens at the Fontana Hub. During the meeting, Plaintiff reported that Raul was out of

13   control, was driving in an unsafe matter, yelled the "f" word at her, slammed the truck door, and

14   was entering and exiting the truck in an unsafe manner (using the belt on the back roller door to

15   pull himself into the back of the truck to retrieve the product).

16        37.    On September 25, 2018, Plaintiff also reported to Duplessis and Steavens that

17   during her deliveries, she experienced other safety issues, including that the customers' floors were

18   very slippery, that the delivery required her to pass by a blazing/flaming grill, and that it was

19   unsafe to get in and out of the truck.

20        38.    Steavens responded to Plaintiff, "Natasha, I hear you. But, tomorrow I'm going to

21   put you back on that same route."

22        39.    Plaintiff requested that she be transferred to a different position. When Steavens

23   started to explain she could not do that, Plaintiff told Steavens that Duplessis had offered to put

24   her in another position and that he had the authority to do so. Steavens looked at Duplessis and

25   asked if he had made such a promise to Plaintiff and Duplessis admitted he had done so.

26        40.    Plaintiff added that she was aware that there was an open admin position at the

27   Fontana Hub. Steavens replied that they would discuss the issue, but told Plaintiff that she needed

28   to let her know by 5:00 p.m. what she wanted to do. For the next couple of hours, Steavens

7

1    assigned Plaintiff to do admin work, such as filing in the Human Resources office.

2        41.    Later that same night, Plaintiff sent an email to Steavens and Duplessis reiterating

3    she felt unsafe riding with Raul.

4        42.    In her September 25, 2018 email, Plaintiff also reported that during her deliveries,

5    she experienced other safety issues, including that the customers' floors were very slippery, that

6    the delivery required her to pass by a blazing/flaming grill, and that it was unsafe to get in and out

7    of the truck. Plaintiff also stated she felt she was working in a hostile work environment. In her

8    email, Plaintiff asked Duplessis to adhere to his verbal agreement to transfer her.

9        43.    On September 26, 2018, at Steavens's request, Plaintiff signed a "Workplace

10   Investigation" form, by which Plaintiff acknowledged Defendants were conducting an

11   investigation into her complaints. The Workplace Investigation form assured Plaintiff she would

12   not be retaliated against for participating in the investigation, as well as informed Plaintiff she was

13   entitled to "pursue the multiple channels provided by" Defendants if she believed she experienced

14   retaliation.

15       44.    That same day, at Plaintiff's request, Steavens sent an email to her supervisor,

16   Senior Human Resources Manager Lara Luckey, copied to Plaintiff, notifying Luckey that Plaintiff

17   wanted to discuss "a situation that she has with" her account.

18       45.    Later in the day on September 26, 2018, Plaintiff spoke with Luckey and reported

19   the same concerns she had previous reported. Luckey responded that Duplessis "shouldn't have"

20   promised to transfer Plaintiff. Plaintiff added that she was aware of the open admin position at the

21   Fontana Hub and told Luckey that she was qualified to do that job. Luckey said she would discuss

22   the issue with Steavens and get back to Plaintiff.

23       46.    After the call, Plaintiff received an email from Steavens, stating in part:

24       As per our conversation as well as the conversation that you had with Ms. Luckey.
         [sic] The position that you were hire [sic] for at the Wine warehouse location is not
25       a good fit for you at this time. We respect your concerns in this matter and have
         taken them very seriously. Since you no longer feel that you are able to perform the
26       duties of this position and would like another opportunity within Ryder possibly in
         an administrative role. [sic] Ryder will give you (5) five days from today to pursue
27       a position within the company for any open position that you may be interested in.
         During this period of time, you will be on an unpaid leave and you are not
28       authorized to be on Ryder or customer property at any time. If you are unable to

                                              8

secure a position within the company at the end of this period, your employment with Ryder will be terminated on Oct 4, 2019 [sic].

47.    That same day, Plaintiff was placed on unpaid leave.

48.    Also on September 26, 2018 even though she had been working for Defendants for more than 3 weeks, Plaintiff was requested to provide an additional authorization to the company that conducts background checks for Defendants.

49.    On September 27, 2018, Plaintiff asked Luckey to put her in touch with Defendants's Human Resources Director. In response, Luckey stated she would have the Human Resources Director contact Plaintiff directly.

50.    Later in the day on September 27, 2018, Steavens sent an email to Plaintiff with contact information for Defendants's Human Resources Director Peggy Hinkle. In the same email, Steavens informed Plaintiff that she was sending her "ADA paperwork since you are requesting an accommodation to your position that you were hired for." Plaintiff replied by email, clarifying to Steavens: "This is a safety issue not an ADA."

51.    Though they scheduled a call for 9:00 am EST on September 28, 2018, when Plaintiff called at that time, Hinkle did not answer. Plaintiff sent a follow-up email and the two exchanged emails regarding rescheduling the call.

52.    Around the same time frame, Plaintiff began an intensified internal search for a different position within Defendants. There were numerous positions for which Plaintiff was qualified and Plaintiff began submitting her resume.

53.    On September 27 and 28, 2018, Plaintiff exchanged email messages with Defendants' Recruiter Patrick Conroy regarding open positions. Conroy offered to "push" for an interview for any position Plaintiff identified.

54.    On September 30, 2018, Plaintiff was asked to complete a "Voluntary Self-Identification of Disability" form. Plaintiff checked the box indicating, "No, I don't have a disability".

55.    On or about October 1, 2018, Plaintiff spoke with Human Resources Manager for Moreno Valley, Kerri Martinez. Plaintiff told Martinez she was interested in the numerous

9

1   positions posted as available in Moreno Valley.

2        56.    On or about October 2, 2018, Plaintiff spoke with phone with Hinkle and provided

3   details of the incident with Raul, safety concerns, the hostile work environment, retaliation, and

4   transferring to another position.

5        57.    Later in the day on October 2, 2018, Plaintiff memorialized the telephone

6   conversation in a follow-up email, which also provided details of the sexual harassment that

7   occurred at the Yard House, which was not covered in the phone call.  Plaintiff's email also

8   confirmed her agreement with Hinkle that the two would talk the following day.

9        58.    On October 3, 2018, Plaintiff spoke again with Martinez and learned that Martinez

10   had spoken with Hinkle.  During this call, Martinez informed Plaintiff that the only positions

11   available were "temporary."  Plaintiff asked for more information, since previously, none of the

12   available positions were listed as temporary.

13        59.    In response to Plaintiff's question, Martinez said she knew how to do her job, and

14   added that she was going to tell Hinkle that Plaintiff was not interested in the open positions.

15   When Plaintiff said that statement was not true, Martinez hung up on her.

16        60.    Plaintiff was shocked and immediately called Martinez right back.  Martinez

17   answered and Plaintiff again started asking why the positions were now marked as "temporary."

18   Martinez again said to Plaintiff, "I know how to do my job," and again hung up on Plaintiff.

19        61.    Also, after Hinkle became involved with Plaintiff's concerns, Conroy stopped

20   communicating with Plaintiff.

21        62.    On or about October 3, 2018, Plaintiff received a letter from Steavens by FedEx,

22   incorrectly confirming that Plaintiff had "requested accommodation for [her] current condition."

23        63.    The October 3, 2018 letter further requested Plaintiff "complete the enclosed

24   Employee Request for Accommodation Form" and provide her physician with a Request for

25   Medical Information (including Job Description and Authorization for the Release of Medical

26   Information signed by Plaintiff).

27        64.    Steavens' October 3, 2018 letter directed Plaintiff to return the completed forms to

28   Human Resources by September 12, 2018 [sic].  Enclosed with Steavens's letter were the

10

1  following: (1) Employee Disability Accommodation Request; (2) a 3 page Request for Medical

2  Information for Reasonable Accommodation to be completed by a physician; and (3) a 2 page

3  Authorization for Release of Health Information Pertaining to Family and Medical Leave Act or

4  Fitness for Duty Assessment Including Certification of Health Care Provider Submitted by

5  Defendants, to be completed by Plaintiff.

6      65.    Also on October 3, 2018, Hinkle sent an email to Plaintiff requesting they schedule

7  a call to discuss the sexual harassment issue.

8      66.    On Friday October 5, 2018, Plaintiff and Hinkle spoke by phone and discussed

9  Martinez hanging up on Plaintiff twice and sexual harassment at the Yard House.  Hinkle assured

10 Plaintiff her concerns were being addressed, including that a safety team was going to the

11 warehouse to inspect Plaintiff's assigned truck.

12     67.    Hinkle ended the October 5, 2018 discussion by explaining to Plaintiff that she had

13 5 days to find a position within Defendants or, she would be terminated (and eligible for rehire).

14     68.    Plaintiff explained to Hinkle that she had been looking for another position

15 internally, but her applications were being blocked.  Plaintiff expressed that she should not be

16 forced to work in a hostile environment, or subjected to retaliation and/or sexual harassment.

17 Plaintiff asked Hinkle for assistance with locating an alternative position, and while Hinkle said

18 she would "think about it," she also advised Plaintiff to look for positions over the weekend.

19     69.    On Tuesday October 9, 2018, Plaintiff sent a follow-up email to Hinkle asking for

20 an update on her efforts to locate a position for Plaintiff.  The October 9 email specifically

21 reiterated that Plaintiff was suffering "retaliation" in response to her own job search, with all

22 online applications bearing a notation "not under consideration," something new since Plaintiff's

23 discussions with Hinkle.

24     70.    Also, on or about October 9, 2018, Plaintiff received a FedEx delivery from

25 Defendants, containing a second letter from Steavens, again incorrectly confirming that Plaintiff

26 had "requested accommodation for [her] current condition."  The October 9, 2018 letter further

27 requested Plaintiff "complete the enclosed Employee Request for Accommodation Form" and

28 provide her physician with a Request for Medical Information (including Job Description and

11

**NATASHA SCOGGINS' COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Authorization for the Release of Medical Information signed by Plaintiff). Steavens's letter

directed Plaintiff to return the completed forms to Human Resources by October 12, 2018.

71.    On Thursday October 11, 2018, Hinkle sent an email in reply to Plaintiff's October

9, 2018 email, addressing 5 categories of Plaintiff's concerns. As to two of the categories, Hinkle

confirmed Plaintiff had complained about safety issues, and she assured Plaintiff those concerns

were being addressed.

72.    With regard to Plaintiff's internal job search, Hinkle's October 11, 2018 letter

summarily concluded that she could not corroborate Plaintiff's claim that she had been wrongfully

denied a position. As to the complaints about Raul, Hinkle offered to change Plaintiff's

assignment to "limit" her "interaction with the driver." At the end her email, Hinkle wrote:

> Absent an indication from you that you will continue in your role or have found
> another position at the Company, I will have no choice but to terminate your
> employment as of 10/11/18.

73.    Plaintiff responded by email later that same day, commenting on the five areas of

concern as laid out in Hinkle's email. Plaintiff's October 11, 2018 email noted Hinkle's responses

regarding the safety concerns, but pointed out that Hinkle's proposed solutions still would not

protect Plaintiff from "blazing grills, personnel at the customer's location bumping into the hand

truck, or from slips and falls, and from being sexually harassed on the route." Plaintiff also clearly

explained that, during her internal job search, she was informed by Martinez that there were a

number of full-time positions which, after Martinez spoke with Hinkle were changed to

"temporary" positions.

74.    In her October 11, 2018 email, Plaintiff identified herself as a "Whistleblower," and

asserted she had been subjected to a "hostile work environment" and "retaliation." Plaintiff

concluded her email stating, in part:

> I am not refusing to continue in my role. Despite my continued concerns about my
> safety, as well as the safety of the other Ryder employees and the general public for
> the reasons I previously expressed, as well as my anticipation that I will be
> subjected to further hostile behavior from my co-workers, I need my job. Because
> you have been unable to place me in an alternate position, please let me know what
> time and day you have scheduled me to return to my work assignment.

75.    In response to Plaintiff's October 11, 2018 email, on Friday October 12, 2018,

12

1  Hinkle called Plaintiff's cell phone and left a voicemail, indicating she was going to be out of the

2  office for two weeks due to a scheduled surgery.  As she wanted to make sure there was a very

3  clear record regarding her complaints and job status, Plaintiff responded to Hinkle's call by asking

4  Hinkle to reply by email.  Having received no reply by email by the end of that day, Plaintiff sent

5  another email to Hinkle stating:

> Please let me know who the V.P. is, your lead, or whomever is in lieu of your
> absence for surgery.  Thus, I can have feedback regarding my concerns and not
> extend beyond what's normally provided as far as time.  I know it's been a concern
> for you.  Again, I need to know when I should report to work.

9  76.    On Monday October 15, 2018, Hinkle responded to Plaintiff's October 12 email,

10  stating: "I was out for part of a Friday.  I will call you today so we can discuss next steps."

11  77.    On October 15 and October 16, Hinkle called Plaintiff's cell phone a number of

12  times, even once from a different number than the one she previously used, perhaps hoping she

13  would "trick" Plaintiff into having a verbal conversation, rather than putting her response in

14  writing.  Plaintiff and Hinkle also exchanged emails over these two days, with Plaintiff repeatedly,

15  but politely, asking Hinkle to respond by email.

16  78.    Hinkle never responded substantively by email as Plaintiff was requesting.  Instead,

17  on October 19, 2018, Hinkle sent the following email:

> Natasha, since I am still traveling and you have not wanted to talk live, I am
> sending this letter via email.

20  79.    Attached to Hinkle's email was an October 19, 2018 letter, whereby Plaintiff was

21  notified her employment was terminated as of October 19, 2018.  The termination letter confirmed

22  the following: (1) Plaintiff had reported that her position was "too physically strenuous"; (2) she

23  had reported that "the repetition of moving product all day was not something [she] could do"; (3)

24  she raised "concerns about the vehicle and equipment" she used at work; and (4) she raised

25  "concerns" about "inappropriate comments" made to her while performing her job duties which

26  Defendants noted were investigated and substantiated in one instance.

27  80.    Plaintiff responded to Hinkle's October 19, 2018 email (and termination letter)

28  within approximately 30 minutes, stating, in part:

13

**NATASHA SCOGGINS' COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Client Files\KYLE01\003\00072823.WPD                                    Printed on Recycled Paper

There are several ways to touch base. You mentioned you would be out as of Friday last week for surgery, and for 2 weeks thereafter with limited phone access. I followed suit with your voicemail of unavailability and it was cohesive with me not having phone access this week. You can certainly access me via email. I've perused your attachment. Which is far apart from my concerns and further support my concerns of retaliation.

81.    On Wednesday November 14, 2018, Plaintiff received a FedEx from Defendants, which included, among other documents, a Notice of Termination stating her employment was "terminated due to not being able to perform duties that are a requirement of the position you were hired on."

82.    Also included in the November 14 FedEx was a Notice to Employee as to Change in Relationship, which indicates Plaintiff was "laid off/discharged on October 20, 2018" in one section, but later states, "On 10/20/18, employment status changed/will change as follows: Involuntary resignation."

83.    At the time her employment ended, Plaintiff's hourly rate was $18.50.

84.    At all relevant times, Plaintiff was an employee covered by Government Code sections 12940 *et seq.*, prohibiting discrimination, harassment and retaliation in the workplace.

85.    At all relevant times, Defendants were employers within the meaning of Government Code section 12926(d) and, as such, were barred from discriminating against, retaliating against and harassing employees as set forth in Government Code sections 12940 *et seq.*.

86.    Plaintiff filed a timely Complaint of Discrimination with the Department of Fair Employment & Housing ("DFEH") on October 18, 2019, and received a "right-to-sue" letter dated the same date.

87.    Plaintiff has exhausted all her administrative remedies.

### FIRST CAUSE OF ACTION

### WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

(Against All Defendants)

88.    Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 87, inclusive, as though fully set forth herein.

14

89.    It is against the public policy of the state of California for an employer to terminate an employee *because* that employee reported suspicions of illegal conduct to her employer. (*Collier v. Superior Court* (1991) 228 Cal.App.3d 1117, 1127).

90.    It is against the public policy of the state of California for an employer to "retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties." (Labor Code §1102.5(b)).

91.    It is against the public policy of the State of California for an employer to retaliate against or terminate an employee for refusing to perform work which violates the Labor Code, any occupational safety or health standard, any safety order, or where there is a real and apparent hazard to the employee or her fellow employees. (Labor Code §§6310, 6311).

92.    It is against the public policy of the state of California to terminate an employee because the employer regards the employee as disabled. (Government Code §12940(a)).

93.    It is against the public policy of the state of California for an employer to "harass, discharge, expel or otherwise discriminate against any person because the person has opposed any practices forbidden under [the Fair Employment & Housing Act]," including sexual harassment, hostile work environment or discrimination based on being regarded as disabled. "or because the person has filed a complaint . . .". (Government Code §12940(h)).

94.    It is against the public policy of the state of California for an employer to discharge, formally discipline, or otherwise discriminate against, an employee who discloses the information about an employer's working conditions. (Labor Code §232.5(c)).

95.    It is against the public policy of the State of California for an employer to terminate

15

**NATASHA SCOGGINS' COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1 | or otherwise discriminate against, an employee because she has a "physical disability," which is

2 | defined as including "(4) Being regarded or treated by the employer or other entity covered by this

3 | part as having, or having had, any physical condition that makes achievement of a major life

4 | activity difficult; (5) Being regarded or treated by the employer or other entity covered by this part

5 | as having, or having had, a disease, disorder, condition, cosmetic disfigurement, anatomical loss,

6 | or health impairment that has no present disabling effect but may become a physical disability as

7 | described in paragraph (1) or (2)." (Government Code §§12926(m)(4), (5)).

8 |     96.    Defendants were motivated to terminate Plaintiff's employment on grounds that

9 | violate California statutes and public policies as set forth above.

10 |     97.    As a proximate result of Defendants' wrongful conduct, Plaintiff suffered

11 | substantial losses in earnings and other employment benefits in an amount according to proof at

12 | the time of trial.

13 |     98.    As a further direct and legal result of Defendants' acts and conduct, Plaintiff has

14 | been caused to and did suffer and continues to suffer severe emotional and mental distress,

15 | anguish, humiliation, embarrassment, fright, mental and physical pain, discomfort and anxiety, all

16 | to her damage in an amount according to proof at the time of trial. Plaintiff does not know at this

17 | time the exact duration or permanence of said injuries, but is informed and believes, and thereon

18 | alleges, that some if not all of the injuries are reasonably certain to be permanent in character.

19 |     99.    Plaintiff has been generally damaged in an amount within the jurisdictional limits

20 | of this Court.

21 |     100.    In doing the acts herein alleged, Defendants, and each of them, acted with

22 | oppression, fraud, malice, and in conscious disregard of Plaintiff's rights and Plaintiff is therefore

23 | entitled to punitive damages in an amount according to proof at the time of trial.

24 |     101.    Plaintiff has also incurred and continues to incur attorneys' fees and legal expenses

25 | in an amount according to proof at the time of trial.

26 | ///

27 | ///

28 | ///

16

## SECOND CAUSE OF ACTION

### UNLAWFUL RETALIATION

(Against All Defendants)

102.    Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 87, inclusive, as though fully set forth herein.

103.    It is "an unlawful employment practice . . . [f]or any employer . . . to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part . . .." (Government Code §12940(h)).

104.    Title 2, California Code of Regulations, section 7287.8 defines unlawful retaliation as follows:

> It is unlawful for an employer or other covered entity to demote, suspend, reduce, fail to hire or consider for hire, fail to give equal consideration in making employment decisions, fail to treat impartially in the context of any recommendations for subsequent employment which the employer or other covered entity may make, adversely affect working conditions or otherwise deny any employment benefit to an individual because that individual has opposed practices prohibited by the Act or has filed a complaint, testified, assisted or participated in any manner in an investigation, proceeding, or hearing conducted by the Commission or Department or their staffs.

105.    It is unlawful for an employer to retaliate against "an employee for disclosing information, or because the employer believes that the employee disclosed *or may disclose information*, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties." (Labor Code §1102.5(b); emphasis added).

106.    During her employment, Plaintiff engaged in the following legally protected activity:

(1)    Complained she was being subjected to a sexually hostile work environment;

17

1         (2)     Complained she was being retaliated against;

2         (3)     Complained she was being required to work in unsafe work conditions;

3         (4)     Complained she was being sexually harassed; and

4         (5)     Characterized herself as a Whistleblower.

5       107.    Defendants were motivated to retaliated against Plaintiff, including placing Plaintiff

6 on unpaid leave and terminating Plaintiff's employment, on grounds that violate the Government

7 Code and the Labor Code.

8       108.    Defendants unlawfully retaliated against Plaintiff by terminating Plaintiff's

9 employment within days of her most recent protected complaint and within weeks of Plaintiff's

10 first protected complaint.

11       109.    As a proximate result of Defendants' wrongful conduct, Plaintiff suffered

12 substantial losses in earnings and other employment benefits in an amount according to proof at

13 the time of trial.

14       110.    As a further direct and legal result of Defendants' acts and conduct, Plaintiff has

15 been caused to and did suffer and continues to suffer severe emotional and mental distress,

16 anguish, humiliation, embarrassment, fright, mental and physical pain, discomfort and anxiety, all

17 to her damage in an amount according to proof at the time of trial. Plaintiff does not know at this

18 time the exact duration or permanence of said injuries, but is informed and believes, and thereon

19 alleges, that some if not all of the injuries are reasonably certain to be permanent in character.

20       111.    Plaintiff has been generally damaged in an amount within the jurisdictional limits

21 of this Court.

22       112.    In doing the acts herein alleged, Defendants, and each of them, acted with

23 oppression, fraud, malice, and in conscious disregard of Plaintiff's rights and Plaintiff is therefore

24 entitled to punitive damages in an amount according to proof at the time of trial.

25       113.    Plaintiff has also incurred and continues to incur attorneys' fees and legal expenses

26 in an amount according to proof at the time of trial.

27       114.    In addition to other penalties, Defendants are liable for a civil penalty not exceeding

28 $10,000 for each violation of Labor Code section 1102.5, as set forth in Labor Code section

**NATASHA SCOGGINS' COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1    1102.5(f).

2    ## THIRD CAUSE OF ACTION

3    ## DISCRIMINATION BASED ON BEING REGARDED AS "DISABLED"

4    (Against All Defendants)

5    115.    Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 87,

6    inclusive, as though fully set forth herein.

7    116.    As alleged herein and in violation of Government Code sections 12940 *et seq.,*

8    Defendants discriminated against Plaintiff because Defendants regarded Plaintiff as disabled, in

9    that employees who were not regarded as disabled were treated better than Plaintiff, and were not

10   disciplined and/or terminated for false and pretextual reasons.

11   117.    Plaintiff alleges that because Defendants regarded her as being physically disabled,

12   she suffered numerous adverse employment actions, including  (1) unwarranted criticism; (2)

13   stricter scrutiny of her performance than that of others; (3) being placed on an unpaid leave; and

14   (4) termination of her employment. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028,

15   1060-1062 [solicitation of negative information; unwarranted and public discipline; unwarranted

16   criticism; demeaning criticism in front of others; heightened response to allegedly poor

17   performance; implied threats of termination; actions that threatened to derail career, combined

18   create adverse employment actions]; *Wideman v. Wal-Mart Stores, Inc.* (11th Cir.1998) 141 F.3d

19   1453, 1456 [written reprimands and solicitation of negative comments by coworkers constituted

20   adverse employment actions]; *Yartzoff v. Thomas* (9th Cir. 1987) 809 F.2d 1371, 1377

21   [undeserved performance ratings]).

22   118.    The circumstances of Plaintiff's termination gives rise to an inference of unlawful

23   discrimination because Defendants regarded Plaintiff as physically disabled. The Fair

24   Employment & Housing Act ("FEHA") protects not only those who have disabilities, but those

25   impermissibly "regarded" as disabled. A person is regarded as disabled if (1) a covered entity

26   mistakenly believes that person has a physical impairment that substantially limits one or more life

27   activities; or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment limits

28   one or more life activities. Discrimination based on an employer's belief that an employee is

19

1  disabled occurs when an "employer decides that perceived limitations or impairments "make

2  individuals less ideally suited for a job". (Government Code §12926(j)(3); *Real v. Compton*

3  (1999) 73 Cal.App.4th 1407, 1416).

4      119.    Defendants terminated Plaintiff's employment within weeks of Defendants' first

5  assumption that Plaintiff suffered from at least one physical disability.

6      120.    As a proximate result of Defendants' wrongful conduct, Plaintiff suffered

7  substantial losses in earnings and other employment benefits in an amount according to proof at

8  the time of trial.

9      121.    As a further direct and legal result of Defendants' acts and conduct, Plaintiff has

10 been caused to and did suffer and continues to suffer severe emotional and mental distress,

11 anguish, humiliation, embarrassment, fright, mental and physical pain, discomfort and anxiety, all

12 to her damage in an amount according to proof at the time of trial. Plaintiff does not know at this

13 time the exact duration or permanence of said injuries, but is informed and believes, and thereon

14 alleges, that some if not all of the injuries are reasonably certain to be permanent in character.

15     122.    Plaintiff has been generally damaged in an amount within the jurisdictional limits

16 of this Court.

17     123.    In doing the acts herein alleged, Defendants, and each of them, acted with

18 oppression, fraud, malice, and in conscious disregard of Plaintiff's rights and Plaintiff is therefore

19 entitled to punitive damages in an amount according to proof at the time of trial.

20     124.    Plaintiff has also incurred and continues to incur attorneys' fees and legal expenses

21 in an amount according to proof at the time of trial.

22                          **FOURTH CAUSE OF ACTION**

23    **FAILURE TO PREVENT DISCRIMINATION, HARASSMENT AND RETALIATION**

24                          (Against All Defendants)

25     125.    Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 87

26 and 116 through 124, inclusive, as though fully set forth herein.

27     126.    Employers have an affirmative duty to prevent harassment. Once Defendants were

28 on notice that Plaintiff complained of a sexually hostile work environment, sexual harassment and

                                    20

**NATASHA SCOGGINS' COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**
Client Files\KYLE01\003\00072823.WPD                                    Printed on Recycled Paper

1  retaliation, they were required to "take all reasonable steps necessary to prevent . . . harassment

2  from occurring." (Government Code §12940(k)).

3      127.  Defendants were aware the Plaintiff reported she was subjected to sexual

4  harassment, a hostile work environment, and retaliation, but failed to take immediate and

5  appropriate corrective action.

6      128.  As a proximate result of Defendants' wrongful conduct, Plaintiff suffered

7  substantial losses in earnings and other employment benefits in an amount according to proof at

8  the time of trial.

9      129.  As a further direct and legal result of Defendants' acts and conduct, Plaintiff has

10  been caused to and did suffer and continues to suffer severe emotional and mental distress,

11  anguish, humiliation, embarrassment, fright, mental and physical pain, discomfort and anxiety, all

12  to her damage in an amount according to proof at the time of trial. Plaintiff does not know at this

13  time the exact duration or permanence of said injuries, but is informed and believes, and thereon

14  alleges, that some if not all of the injuries are reasonably certain to be permanent in character.

15      130.  Plaintiff has been generally damaged in an amount within the jurisdictional limits

16  of this Court.

17      131.  In doing the acts herein alleged, Defendants, and each of them, acted with

18  oppression, fraud, malice, and in conscious disregard of Plaintiff's rights and Plaintiff is therefore

19  entitled to punitive damages in an amount according to proof at the time of trial.

20      132.  Plaintiff has also incurred and continues to incur attorneys' fees and legal expenses

21  in an amount according to proof at the time of trial.

22                          **FIFTH CAUSE OF ACTION**

23       **FAILURE TO PAY STATUTORILY MANDATED WAGES**

24                   (Against All Defendants)

25      133.  Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 87,

26  inclusive, as though fully set forth herein.

27      134.  Plaintiff was not paid for the one hour she was required to perform a road test

28  during the screening process, prior to her official start date, and was not paid premium pay on the

**NATASHA SCOGGINS' COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Client Files\KYLE01\003\00072823.WPD

Printed on Recycled Paper

1  occasions she worked more than 12 hours but was not provided a second meal period.

2      135.    As such, for this claim, Plaintiff is entitled to wages and premium pay at the rate of

3  $18.50 per hour, plus interest, penalties, litigation costs and attorneys' fees.

4      136.    Plaintiff was also entitled to be paid out all accrued paid time off at the time of

5  termination.

6      137.    On information and belief, Plaintiff had accrued paid time off which was not

7  included in her final paycheck.

8      138.    As a proximate result of Defendants' unlawful acts, Plaintiff has been deprived of

9  wages and premium pay and other compensation in amounts according to proof at the time of trial.

10     139.    Plaintiff has been generally damaged in an amount within the jurisdictional limits

11  of this Court.

12     140.    Plaintiff has also incurred and continues to incur attorneys' fees and legal expenses

13  in an amount according to proof at the time of trial.

14                              **SIXTH CAUSE OF ACTION**

15          **BREACH OF EXPRESS VERBAL AND WRITTEN CONTRACT**

16                               (Against All Defendants)

17     141.    Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 87,

18  inclusive, as though fully set forth herein.

19     142.    Prior to, and immediately after, her hire date, Plaintiff was promised she would be

20  reassigned if she had any "challenges" with her assignment, including because it was "hard work."

21     143.    Despite these promises, when Plaintiff repeatedly requested reassignment,

22  Defendants breached their contractual obligations by refusing to transfer Plaintiff to a different

23  position.

24     144.    Further, though Defendants promised Plaintiff in writing that, instead of being

25  terminated, she could return to her position, when Plaintiff clearly stated she would return to her

26  position, Defendants nevertheless terminated her employment.

27     145.    Plaintiff reasonably relied on the promises made to her by Defendants.

28     146.    Based on the foregoing, there existed express contracts between Plaintiff and

                                        22

**NATASHA SCOGGINS' COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**
Client Files\KYLE01\003\00072823.WPD                                    Printed on Recycled Paper

1   Defendants, both in writing and verbal relating to the terms and conditions of Plaintiff's

2   employment.

3       147.    Plaintiff performed all conditions, covenants and promised to be performed on

4   Plaintiff's part under the express contracts, except for those conditions, covenants and promises

5   excused by reasons of the breach of the implied contract by Defendants.

6       148.    Defendants, and each of them, breached the express contracts by (1) refusing to

7   transfer Plaintiff to a different position; and (2) not permitting Plaintiff to return to her position, as

8   an alternative to being terminated.

9       149.    As a proximate result of Defendants' breach of the express verbal and written

10  contracts with Plaintiff, Plaintiff has been damaged, in that Plaintiff has suffered and continues to

11  sustain substantial losses in earnings and other employment benefits in an amount according to

12  proof at the time of trial.

13                          **SEVENTH CAUSE OF ACTION**

14                              **PROMISSORY FRAUD**

15                              (Against All Defendants)

16      150.    Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 87,

17  inclusive, as though fully set forth herein.

18      151.    Prior to, and immediately after, her hire date, Plaintiff was promised she would be

19  reassigned if she had any "challenges" with her assignment, including because it was "hard work."

20      152.    Despite these promises, when Plaintiff repeatedly requested reassignment,

21  Defendants breached their contractual obligations by refusing to transfer Plaintiff to a different

22  position.

23      153.    Further, though Defendants promised Plaintiff in writing that, instead of being

24  terminated, she could return to her position, when Plaintiff clearly stated she would return to her

25  position, Defendants nevertheless terminated her employment.

26      154.    Defendants represented the above promises as true, but in fact the representations

27  were false.

28      155.    At the time Defendants made the representations, they actually had no intent to

                                        23

**NATASHA SCOGGINS' COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**
Client Files\KYLE01\003\00072823.WPD                                    Printed on Recycled Paper

1 | abide by their promises and/or Defendants knew that their representations were false at the time

2 | they made the representations and/or made the representations recklessly and without regard for

3 | their truth.

4 | 156. In making these promises to Plaintiff, Defendants knew or should have known that

5 | these promises would induce Plaintiff to accept and maintain employment with Defendants.

6 | 157. At the time these representations were made, Plaintiff believed them to be true.

7 | 158. In reliance on these representations by Defendants, Plaintiff accepted employment

8 | with Defendants and performed, and continued to perform all of her work in an exemplary manner.

9 | 159. Plaintiff reasonably relied on Defendants' promises and representations as set forth

10 | above and was induced by those promises and representations to accept and maintain employment

11 | with Defendants and to perform and continue performing her duties for Defendants in an

12 | exemplary manner.

13 | 160. As a proximate result of Defendants' failure to perform according to the promises

14 | and representations which they made to Plaintiff, and Plaintiff's reliance on those promises to

15 | Plaintiff's detriment, Plaintiff suffered substantial losses in earnings and other employment

16 | benefits in an amount according to proof at the time of trial.

17 | 161. As a further direct and legal result of Defendants' acts and conduct, Plaintiff has

18 | been caused to and did suffer and continues to suffer severe emotional and mental distress,

19 | anguish, humiliation, embarrassment, fright, mental and physical pain, discomfort and anxiety, all

20 | to her damage in an amount according to proof at the time of trial. Plaintiff does not know at this

21 | time the exact duration or permanence of said injuries, but is informed and believes, and thereon

22 | alleges, that some if not all of the injuries are reasonably certain to be permanent in character.

23 | 162. Plaintiff has been generally damaged in an amount within the jurisdictional limits

24 | of this Court.

25 | 163. In doing the acts herein alleged, Defendants, and each of them, acted with

26 | oppression, fraud, malice, and in conscious disregard of Plaintiff's rights and Plaintiff is therefore

27 | entitled to punitive damages in an amount according to proof at the time of trial.

28 | 164. Plaintiff has also incurred and continues to incur attorneys' fees and legal expenses

24

**NATASHA SCOGGINS' COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

in an amount according to proof at the time of trial.

## EIGHTH CAUSE OF ACTION

### FAILURE TO PROVIDE ADEQUATE MEAL PERIODS AND REST BREAKS

(Against All Defendants)

165.    Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 87, inclusive, as though fully set forth herein.

166.    Plaintiff is entitled to premium pay in the amount of the equivalent of 1 hour of pay for each day she did not take a second 30 minute duty-free meal period within the first 10 hours of her work day.  (Labor Code §226.7(b)).

167.    Plaintiff's trip sheets show at least 2 days that she worked more than 12 hours without a second meal period.

168.    Plaintiff's paystubs do not reflect the payment of any premium pay.

169.    Because Defendants failed to afford a second meal period a required by law, they are liable to Plaintiff for 1 hour of additional pay at the regular rate of compensation for each occasion when such meal periods were not provided, pursuant to Labor Code section 226.7 and the Wage Orders.

170.    As a proximate result of Defendants' conduct, Plaintiff is entitled to premium pay as set forth above in an amount according to proof at the time of trial.

171.    Plaintiff has been generally damaged in an amount within the jurisdictional limits of this Court.

172.    Plaintiff has also incurred and continues to incur attorneys' fees and legal expenses in an amount according to proof at the time of trial.

## NINTH CAUSE OF ACTION

### FAILURE TO TIMELY PAY WAGES UPON TERMINATION

(Against All Defendants)

173.    Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 87, 134 through 140 and 166 through 172,  inclusive, as though fully set forth herein.

174.    Labor Code section 201 requires an employer who discharges an employee to pay

25

1    compensation due and owing to said employee immediately upon discharge.

2        175.    Given that Plaintiff's employment was terminated by email on October 19, 2018,

3    she was not provided with her final paycheck "upon termination." In fact, Plaintiff did not receive

4    her final paycheck until October 26, 2018.

5        176.    Labor Code section 203 provides that if an employer willfully fails to pay

6    compensation promptly upon discharge or resignation, as required by section 201, the employer is

7    liable for waiting time penalties in the form of continued compensation for up to 30 days.

8        177.    Plaintiff has also incurred and continues to incur attorneys' fees and legal expenses

9    in an amount according to proof at the time of trial.

10                          **TENTH CAUSE OF ACTION**

11        **FAILURE TO TIMELY PROVIDE EMPLOYEE PERSONNEL RECORDS**

12                            (Against All Defendants)

13        178.    Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 87,

14    inclusive, as though fully set forth herein.

15        179.    If an employee or applicant signs any instrument relating to the obtaining or holding

16    of employment, he shall be given a copy of the instrument "upon request." (Labor Code §432).

17        180.    Within 30 days of submitting a written request, every employee has the right to a

18    receive a copy of the personnel records her employer maintains relating to the employee's

19    performance or to any grievance concerning the employee. (Labor Code §1198.5(a)).

20        181.    The following categories of records are defined as personnel records within the

21    meaning of Labor Code section 1198.5: "those that are used or have been used to determine that

22    employee's qualifications for employment, promotion, additional compensation, or termination or

23    other disciplinary action." (*Wellpoint Health Networks, Inc. v. Superior Court* (1997) 59

24    Cal.App.4th 110).

25        182.    On January 8, 2019, Plaintiff's counsel sent a letter to Defendants' requesting

26    copies of Plaintiff's personnel file and earnings statements, as well as all documents Plaintiff

27    signed.

28        183.    Although Defendants responded and produced various responsive documents by

                                    26

**NATASHA SCOGGINS' COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**
Client Files\KYLE01\003\00072823.WPD                                    Printed on Recycled Paper

1   email on January 31, 2019, the documents produced by Defendants did not include all documents

2   Plaintiff signed or all documents in Plaintiff's personnel file, including but not limited to a

3   "Workplace Investigation" signed by Plaintiff, Plaintiff's October 19, 2018 termination letter, the

4   Notice to Employee as to Change in Relationship, Plaintiff's Trip Sheets, Defendants' Employee

5   Handbook (only produced Acknowledgment on page 114), a different version of Defendants'

6   Employee Handbook (only produced Acknowledgment on page 27), Defendants' Vacation Policy

7   Addendum for California Based Full-Time Employees (only produced Acknowledgment page),

8   and Defendants' Attendance Policy (only produced page 4 of 4),

9        184.    Because Defendants failed to abide by section 1198.5(a), they are subject to the

10  provisions of Labor Code section 1198.5(k) which states:

11        If an employer fails to permit a current or former employee, or his or her
          representative, to inspect or copy personnel records within the times specified in
12        this section, or times agreed to by mutual agreement as provided in this section, the
          current or former employee or the Labor Commissioner may recover a penalty of
13        seven hundred fifty dollars ($750) from the employer.

14       185.    Plaintiff is also entitled to attorneys' fees and litigation costs for instituting this

15  action pursuant to Labor Code section 1198.5(1).

16                          **ELEVENTH CAUSE OF ACTION**

17                   **VIOLATION OF LABOR CODE SECTION 6311**

18                             (Against All Defendants)

19       186.    Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 87,

20  inclusive, as though fully set forth herein.

21       187.    Labor Code section 6400 requires employers to "furnish employment and a place of

22  employment that is safe and healthful for the employees therein."

23       188.    Employees who refuse to work in unsafe conditions may not be terminated on that

24  basis. (Labor Code §6311).

25       189.    Every employer is required to furnish and use safety devices and safeguards and

26  "do every other thing reasonable necessary to protect the life, safety and health of employees."

27  (Labor Code §6400).

28       190.    From the beginning of her employment, Plaintiff repeatedly reported that she felt

                                    27

**NATASHA SCOGGINS' COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1   unsafe entering and exiting her assigned truck, as well as the fact that she encountered slippery

2   floors, was forced to walk by blazing hot grills and was required to ride in a vehicle that was being

3   driven by another employee in an unsafe manner.

4       191.    Defendants were motivated to terminate Plaintiff's employment because Plaintiff

5   refused to work in unsafe conditions and for complaining about the unsafe work conditions.

6       192.    By Defendants' aforesaid acts and omissions, Plaintiff has been directly and legally

7   caused to suffer actual damages including, but not limited to, loss of earnings and future earning

8   capacity, and other pecuniary loss in an amount according to proof at the time of trial.

9       193.    As a further direct and legal result of Defendants' acts and conduct, as aforesaid,

10  Plaintiff has been caused to suffer and did suffer and continues to suffer severe emotional and

11  mental distress, anguish, humiliation, embarrassment, fright, mental and physical pain, discomfort

12  and anxiety.

13      194.    Plaintiff has been generally damaged in an amount within the jurisdictional limits

14  of this Court.

15      195.    Plaintiff is informed and believes and thereon alleges that, by engaging in the

16  aforementioned acts and/or in authorizing and/or ratifying such acts, Defendants engaged in

17  willful, malicious, intentional, oppressive, fraudulent and despicable conduct, and acted in willful

18  and conscious disregard of Plaintiff's rights, welfare and safety, thereby justifying the award of

19  punitive and exemplary damages in an amount according to proof at the time of trial.

20      196.    Plaintiff has also incurred and continues to incur attorneys' fees and legal expenses

21  in an amount according to proof at the time of trial.

22      197.    Violations of these code sections constitute misdemeanors, each punishable by

23  imprisonment in the county jail for a period not to exceed six moths, or by a fine not to exceed

24  $5,000.00, or both.

25  ///

26  ///

27  ///

28  ///

28

## TWELFTH CAUSE OF ACTION

### UNFAIR BUSINESS PRACTICES

(Against All Defendants)

198.    Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 87, 103 through 114, 116 through 124, 126 through 132, 134 through 140, 166 through 172, 174 through 177, 179 though 185 and 187 through 197, inclusive, as though fully set forth herein.

199.    During Plaintiff's employment, Defendants engaged in the following unlawful conduct, constituting unfair business practices:

(1)     terminated Plaintiff because of her complaints about sexual harassment in violation of Government Code section 12940(h);

(2)     terminated Plaintiff because of her complaints about a hostile work environment in violation of Government Code section 12940(h);

(3)     terminated Plaintiff because of her complaints about an unsafe work environment and unsafe work conditions in violation of Labor Code sections 6310, 6311 and 6400;

(4)     terminated Plaintiff because of her refusal to work in unsafe work conditions in violation of Labor Code sections 6310, 6311 and 6400;

(5)     terminated Plaintiff because they regarded Plaintiff as disabled in violation of Government Code section 12940(a);

(6)     subjected Plaintiff to a sexually hostile work environment in violation of Government Code section 12940(j);

(7)     subjected Plaintiff to sexual harassment in violation of Government Code section 12940(j);

(8)     retaliated against Plaintiff because of her complaints about sexual harassment in violation of Government Code section 12940(h);

(9)     retaliated against Plaintiff because of her complaints about a hostile work environment in violation of Government Code section 12940(h);

(10)    retaliated against Plaintiff because of her complaints about an unsafe work

29

environment and unsafe work conditions in violation of Labor Code sections 6310, 6311 and 6400;

(11) retaliated against Plaintiff because of her refusal to work in unsafe work conditions in violation of Labor Code sections 6310, 6311 and 6400;

(12) retaliated against Plaintiff because they regarded Plaintiff as disabled in violation of Government Code section 12940(a);

(13) failed to maintain a workplace free from discrimination, harassment and retaliation in violation of Government Code section 12940(k);

(14) failed to prevent discrimination, harassment and retaliation in the workplace in violation of Government Code section 12940(k);

(15) failed to pay Plaintiff premium pay for her missed second meal period when she worked more than 12 hours in violation of Labor Code section 226.7;

(16) failed to pay Plaintiff all wages due at the time of termination in violation of Labor Code section 201;

(17) failed to pay Plaintiff one additional day's wages as waiting time penalties for each day that passed between Plaintiff's termination date and the date Plaintiff received her final paycheck in violation of Labor Code section 203;

(18) failed to pay Plaintiff all accrued paid time off at the time of termination in violation of Labor Code sections 201 and 227.3;

(19) failed to provide a safe work environment in violation of Labor Code section 6400;

(20) failed to provide Plaintiff with copies of all documents she signed "upon request" in violation of Labor Code section 432;

(21) failed to provide Plaintiff with a copy of her complete personnel file within 30 days of her request therefor in violation of Labor Code section 1198.5;

(22) failed to pay Plaintiff for all hours worked in violation of Labor Code sections 200, 202, 204 and 1197;

(23) failed to pay Plaintiff all undisputed wages due to Plaintiff in violation of

30

Labor Code section 206;

(24)    failed to provide Plaintiff with accurate earnings statements in violation of
Labor Code section 226(a);

(25)    failed to pay Plaintiff at least minimum wage for hours worked in violation
of Labor Code sections 202, 204 and 1197;

(26)    terminated Plaintiff for reporting Defendants' unlawful conduct in violation
of Labor Code section 1102.5;

(27)    terminated Plaintiff because they believed Plaintiff would legally pursue or
externally report Defendants' unlawful conduct in violation of Labor Code
section 1102.5;

(28)    retaliated against Plaintiff for reporting Defendants' unlawful conduct in
violation of Labor Code section 1102.5;

(29)    retaliated against Plaintiff because they believed Plaintiff would legally
pursue or externally report Defendants' unlawful conduct in violation of
Labor Code section 1102.5;

(30)    terminated Plaintiff because she disclosed information about Defendants'
work conditions in violation of Labor Code section 232.5;

200.    Defendants' conduct, as alleged above, constitutes unlawful, unfair and fraudulent
activity prohibited by Business and Professions Code sections 17200, *et seq.*

201.    As a result of their improper acts, Defendants have reaped and continue to reap
unfair benefits and illegal profits at Plaintiff's expense.  Defendants should be enjoined from this
activity and made to disgorge these ill-gotten gains and restore to Plaintiff the wrongfully withheld
wages and related premium pay and/or penalties, pursuant to Business and Professions Code
section 17203.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

1.    That the Court find that Defendants' violations as described above are found to
have been willful;

31

**NATASHA SCOGGINS' COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**
Client Files\KYLE01\003\00072823.WPD                                                                    Printed on Recycled Paper

2.   That Defendants be ordered and enjoined to pay restitution to Plaintiff, due to Defendants' unlawful, unfair and fraudulent activities, pursuant to Business and Professions Code sections 17200-17205;

3.   That Defendants further be enjoined to cease and desist from unlawful activities in violation of Business and Professions Code sections 17200, *et seq.*;

4.   For disgorgement through restitution of all ill-gotten and/or ill-gained profits, including unpaid wages, premiums and/or penalties, resulting from Defendants' unfair business practices pursuant to Business and Professions Code sections 17200-17205;

5.   That Defendants be ordered to pay punitive damages to Plaintiff as well as all other recoverable penalties to Plaintiff and/or the State of California.

6.   For special and general damages;

7.   For unpaid wages and penalties;

8.   For past and future lost income and benefits;

9.   For emotional distress damages;

10.   That Plaintiff be awarded reasonable attorneys' fees where available by law, including but not limited to pursuant to the Labor Code, the Government Code, and/or other applicable laws;

11.   For costs of suit incurred herein;

12.   Prejudgment and post-judgment interest as available by law; and

13.   For such other and further relief as this Court may deem just and proper.

DATED: October **15**, 2020

APPLETON LAW GROUP, APC

By: _____

HEATHER APPLETON
Attorneys for Plaintiff
NATASHA SCOGGINS

///
///
///

32

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial of all causes of action and claims with respect to which she has a right to jury trial.

DATED: October 15, 2020

APPLETON LAW GROUP, APC

By: _____

HEATHER APPLETON
Attorneys for Plaintiff
NATASHA SCOGGINS

**NATASHA SCOGGINS' COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Client Files\KYLE01\003\00072823.WPD                                      Printed on Recycled Paper